# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Douglas Cruz, *et al.*, on behalf of all others similarly situated,

   Plaintiffs,

v.

Joseph Decker,

   Defendant

Case No.: 2:19-cv-0265-JAD-NJK

**Order Granting Defendants' Motion to Dismiss and Closing this Case**

[ECF Nos. 7, 18, 19]

  Douglas Cruz and Laura J. Buckley bring this putative class action, alleging in a single claim under 42 U.S.C. § 1983 that Joseph Decker, a former administrator of the Division of Industrial Relations (DIR), violated their civil rights by failing to update actuarial tables that insurers use to calculate lump-sum awards under Nevada's workers' compensation scheme. Decker moves to dismiss.[1] The Magistrate Judge entered a Report and Recommendation.[2] She recommends that I find that qualified immunity shields Decker from this suit and grant the motion to dismiss. The plaintiffs object to the magistrate judge's recommendation on several grounds.[3] For the reasons explained below, I adopt the recommendation, dismiss plaintiffs' claim, and direct the Clerk of Court to close this case.

## Background

  The plaintiffs allege that they are partially permanently disabled persons who elected to receive a lump-sum, permanent-partial-disability (PPD) payment under Nevada's workers' compensation scheme after February 15, 2017, but before December 4, 2017. Nevada's

---

[1] ECF No. 7.
[2] ECF No. 18.
[3] ECF No. 19.

workers' compensation scheme governs how a worker can apply for compensation and details the payments to which they are entitled. Private insurers or self-insured employers pay the benefits. If an employee applies for benefits and a physician determines that the employee is partially permanently disabled, the injured employee may be entitled to PPD benefits.[4]

**A.  Nevada's lump-sum payment system**

Prior to July 1, 2017, if an insurer determined that an employee was entitled to PPD benefits, he could elect to have his benefits paid either in installments or in a lump sum.[5] If an employee chose a lump-sum payment, the insurer was required to calculate the lump sum "equal to the present value of the compensation awarded, less any advance payment or lump sum previously paid."[6] The present value was "calculated using monthly payments in the amounts prescribed in subsection 7 of NRS 616C.490 and actuarial annuity tables adopted by the Division."[7] The statute further required that the actuarial tables "be reviewed annually by a consulting actuary."[8]

In June 2016, an Appeals Officer in *The Matter of the Contested Ind. Ins. Claim of Larry Stratton*,[9] determined that the DIR must ensure that the actuarial tables reflect present value and that it "'must' do so by having the tables contained in NAC 616C.502 reviewed by an actuary every year."[10] The Appeals Officer concluded, as a matter of law, that the "DIR does not have

---

[4] Nev. Rev. Stat. § 616C.490.
[5] Nev. Rev. Stat. §§ 616C.490(7), 616C.495(1) (effective Jan. 1, 2016, to June 30, 2017).
[6] Nev. Rev. Stat. § 616C.495(5) (effective Jan. 1, 2016, to June 30, 2017).
[7] *Id.*
[8] *Id.*
[9] ECF No. 4, Exh. B.
[10] *Id.*

discretion to not annually ensure that the tables contained in NAC 616C.502 accurately reflect 'present value,' as mandated by NRS 616C.495(5)."[11]

The DIR petitioned for review of the order. On February 15, 2017, a Nevada state district court entered a minute order in *Admin. of the Div. of Ind. Rel. v. Dept. of Admin., Hearings Div.,* Case No A-16-738866, denying the relief sought by the DIR.[12] In a subsequent written order, entered March 21, 2017, the state district court determined that "DIR has intentionally refused and failed to perform a statutorily required duty to update the tables in NAC 616.502."[13]

Effective July 1, 2017, Nevada revised the relevant portions of the statutes regarding lump-sum payments. After that date, employees entitled to PPD benefits could, depending on certain conditions and thresholds, receive all or a portion of their PPD benefits paid in a lump sum.[14] As before, to the extent that an employee is entitled to a lump-sum payment, the insurer is required to calculate the lump sum "equal to the present value of the compensation awarded, less any advance payment or lump sum previously paid."[15] Similarly, the present value "must be calculated using monthly payments in the amounts prescribed in subsection 7 of NRS 616C.490 and actuarial annuity tables adopted by the Division."[16] In contrast, however, the statute was

---

[11] *Id.*
[12] ECF No. 4, Exh. C.
[13] ECF No. 4, Exh. D.
[14] Nev. Rev. Stat. § 616C.495(1)(d–f).
[15] Nev. Rev. Stat. § 616C.495(5).
[16] *Id.*

3

amended to expressly require that the actuarial tables not only "be reviewed annually by a consulting actuary" but that they "must be adjusted accordingly on July 1 of each year."[17]

### B.  Plaintiffs claim that their lump-sum payment was shorted because of outdated actuarial tables.

The basis of the plaintiffs' complaint is the DIR's failure to update the actuarial tables. They allege that, prior to December 4, 2017, the DIR last revised or amended the actuarial table in 1997, and that insurers continued to use that outdated table to calculate lump-sum payments. They allege that using an old actuarial table resulted in lump-sum payments that were much smaller than the present value of their monthly payments, had the present value been calculated using updated tables. They allege that this difference results from changing interest rates and average-life-expectancy rates. They also allege that, despite the state district court's February 15, 2017, minute order and the revision to NRS § 616C.495(5) effective July 1, 2017, the DIR did not have the actuarial tables reviewed by a consulting actuary and updated until December 4, 2017.

The plaintiffs sue Joseph Decker, the Administrator of DIR during the period from February 15 through December 4, 2017, in his individual capacity for monetary relief. They allege that they elected to receive a lump-sum payment during that time period. They assert that their receipt of "inaccurate" lump-sum payments violates the Fourteenth Amendment. They claim that, under the state district court's order and the amended NRS § 616C.495(5), the Administrator of the DIR had a non-discretionary duty to update the actuarial tables so that they could be used to calculate present value, lump-sum payments that are equal to present value compensation. Plaintiffs allege a property right in the present-value calculation of their lump-

---

[17] *Id.*

sum payments that is protected by the Due Process Clause of the Fourteenth Amendment. They assert a substantive due-process claim alleging that the Decker's repeated failure to update the actuarial table during this time period essentially required that insurers deny them the present value lump-sum award they were guaranteed by Nevada law. They also bring a procedural due-process claim alleging that "the defendant afforded the plaintiffs and the class members no mechanism, through the regulations that they [sic] issued as the DIR Administrator, to have the correctness" of the lump-sum calculation reviewed or challenged. Finally, the plaintiffs allege that their equal-protection rights were violated because they received smaller awards than those who received their benefits in installments, for no rational reason.

Decker moves to dismiss each of the theories underlying the plaintiffs' § 1983 claim. He contends that the plaintiffs (1) have failed to show that state action caused their deprivations because private insurers, not the state, calculated their benefits; (2) lack a property interest in a particular calculation of a lump-sum payment; (3) were given notice and an opportunity to be heard if they disagreed with their lump-sum payments; (4) cannot show that the Administrator's failure to update the actuarial table was arbitrary or irrational; and (5) cannot show that the defendant intentionally discriminated against them to support their equal-protection claim. The defendant also raises a qualified-immunity defense. The magistrate judge recommends that this case be dismissed based upon Decker's qualified immunity. I follow that recommendation, as the pleadings and record demonstrate that he is immune from the plaintiffs' claim.

. . .

**Discussion**

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[18] "Public officials are immune from suit . . . unless they have 'violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'"[19] The central dispositive inquiry essential to finding a right "clearly established" is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[20]

"To be clearly established, a right must be sufficiently clear that *every* reasonable official would have understood that *what he is doing* violates that right."[21] It is not necessary for a plaintiff to cite a case that is "directly on point, [but] existing precedent must have placed the . . . constitutional question beyond debate."[22] As the Ninth Circuit explained in *Hamby v. Hammond*, a defendant is entitled to qualified immunity so long as "none of our precedents 'squarely governs' the facts here," meaning that "we cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law' would have . . . acted as [the officials]

---

[18] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[19] *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)).

[20] *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *receded from by Pearson*, 555 U.S. 223.

[21] *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016) (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)) (emphasis in *Hamby*).

[22] *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011)).

did."[23] The plaintiff bears the burden of demonstrating that the "right allegedly violated was clearly established at the time of the alleged misconduct."[24]

The plaintiffs contend that Decker is not entitled to qualified immunity because the state district court, "in its written and entered order of March 21, 2017, . . . confirming . . .its minute order of February 15, 2017, . . . agrees with and expands the ALJ's finding that NRS 616C.495(5) imposes a mandatory duty upon the DIR Administrator to annually review and revise (when needed to have it conform to present value) the NAC 616C.502 actuarial annuity tables."[25] "Qualified immunity shields only actions taken pursuant to discretionary functions" and does not protect "non-discretionary or ministerial" duties.[26] "Generally, ministerial, non-discretionary functions are those that lend themselves readily to formulaic determination, while discretionary functions are those that require particularized judgments." As the magistrate judge noted, "qualified immunity is lost when plaintiffs point either to cases of controlling authority in their jurisdiction at the time of the incident or to a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful."[27]

The plaintiffs have not shown that the state district court's February 15, 2017, order clearly established that, as of that date, the defendant had a non-discretionary duty to update the actuarial tables under NRS § 616C.495(5) by the following day. The plaintiffs argue that the defendant "offers no plausible, or even colorable, explanation of why the Stratton order, issued

---

[23] *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
[24] *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991).
[25] ECF No. 14 at 5–6.
[26] *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir. 1989).
[27] *Ashcroft v. al-Kidd*, 563 U.S. 731, 746 (2011) (Kennedy, J., concurring) (citations and internal quotation marks omitted).

7

on February 15, 2017, did not terminate his qualified immunity."[28] The argument fails at the outset because it is the plaintiffs' burden to point to controlling authority. While the plaintiffs have pointed to the state district court's minute order, they have not established that, as soon as that minute order was entered, it became "controlling authority" regarding Decker's non-discretionary duty owed under NRS § 616C.495(5) to all Nevada PPD claimants subsequently electing to receive a lump-sum payment.[29] The plaintiffs have not even established that the February 15, 2017, minute order was a final, non-appealable decision establishing Decker's duty to Stratton. Absent from plaintiffs' argument is any citation to authority suggesting that a minute order by a state trial judge constitutes "controlling authority" regarding the construction of a state statute as to all other courts in Nevada. I have previously determined that, prior to July 1, 2017, "the statute unambiguously required only that the defendants review the tables annually, not that they revise or update them." As written, the statute gave the DIR Administrators like Decker discretion to determine when or if to revise or update the actuarial tables.

The plaintiffs next point to the revision of NRS § 616C.495(5), effective July 1, 2017, as controlling authority clearly establishing that Decker had a non-discretionary duty to update the tables on July 1, 2017. While the revised statute is controlling authority, "officials become liable for damages only to the extent that there is a clear violation of the statutory rights that give rise

---

[28] ECF No. 14 at 4–5.

[29] As a single decision, the minute order also fails to constitute "a consensus of cases of persuasive authority." Further, my prior decision in *Shannon v. Decker*, No. 2:17-cv-875-JAD-GWF, 2018 WL 4088020, at *1 (D. Nev. Aug. 27, 2018), affirmed by the Ninth Circuit, 794 F. App'x 679 (9th Cir. 2020), precludes a finding that the cases reached a consensus that the prior version of NRS § 616C.495(5) created a non-discretionary duty to update the tables. Rather, I held that "the statute unambiguously required only that the defendants review the tables annually, not that they revise or update them." *Shannon*, 2018 WL 4088020, at *2.

8

to the cause of action for damages."[30]  Contrary to plaintiffs' argument, the revised statute does not clearly direct the DIR to adjust the actuarial tables on July 1, 2017.  Rather, the statute, which became effective on July 1, 2017, required that "tables must be reviewed annually by a consulting actuary and must be adjusted accordingly on July 1 of each year by the Division."[31] The revised statute clearly establishes that the DIR had a non-discretionary duty to have the tables subjected to an *annual* review by a consulting actuary and to have the tables adjusted according to that review on July 1, 2018.  Given the effective date of the statute, however, the statute does not clearly establish the DIR had such a non-discretionary duty in 2017.

      The plaintiffs may be correct that the Nevada Legislature intended to not only give the DIR a non-discretionary duties to have the tables receive their annual review by a consulting actuary and follow an appropriate process to have adjusted tables properly adopted, but also a non-discretionary duty to begin and complete both of those tasks by the end of the day on July 1, 2017.  Assuming that the legislature intended this implausible task, it did not draft a statute clearing establishing that intent.  A reasonable official would not have clearly understood that his failure to have the tables reviewed, adjusted, and adopted as regulation on the effective date of the statute was a statutory or constitutional violation.  And because each of the plaintiffs' theories stems solely from Decker's alleged failure to update the tables on February 16, 2017, or alternatively on July 1, 2017, he is entitled to qualified immunity on plaintiffs' entire action.[32]

---

[30] *Davis v. Scherer*, 468 U.S. 183, 194 n.12 (1984).

[31] Nev. Rev. Stat. § 616C.495(5).

[32] The plaintiffs' claim that the defendant falsely informed them of the present value of their lump-sum payment is also without merit.  As the Ninth Circuit noted when affirming my decision in *Shannon*, "[b]ecause the challenged statement in the D-13 form is consistent with the definition of "present value" under Nevada's workers' compensation scheme, the challenged statement in the D-13 form cannot be 'false' as a matter of law."  *Shannon v. Decker*, 794 F.

**Conclusion**

Accordingly, with good cause appearing and no reason to delay,

THE COURT **OVERRULES** the plaintiffs' Objection **[ECF No. 19]** and **ADOPTS** the Report and Recommendation **[ECF No. 18]**;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the defendant's motion to dismiss **[ECF No. 7] is GRANTED. This action is DISMISSED**. The Clerk of Court is directed to ENTER JUDGMENT ACCORDINGLY and **CLOSE THIS CASE.**

Dated: March 31, 2020

_____
U.S. District Judge Jennifer A. Dorsey

---

App'x 679, 680 n. 2 (9th Cir. 2020). Because I find that Decker is entitled to qualified immunity on plaintiffs' § 1983 claim, I need not and do not address his other dismissal arguments.